WM. G. STEWART *et al. v.* ILLINOIS CENTRAL RAILROAD
COMPANY.

(*Nashville.*   December Term, 1920.)

MUNICIPAL CORPORATIONS.  Municipality cannot grant railroad
right of way in street which will take substantial portion.

Public highways belong from side to side and from end to end to
the public, and abutting owners have special rights of egress and
ingress, and consequently a municipality is without authority to
grant a railroad company a right of way in a street which would
exclude the public from partically one-fourth of the street and
deprive abutting owners of their rights of ingress and egress; for,
could the municipality take one-fourth of the street, it might
take a half, or all.

Cases cited and approved: McDonald v. Newark, 42 N. J. Eq., 136;
Julia Bldg. Ass'n v. Bell Telephone Co., 88 Mo., 258; Doane v.
Elevated Railroad, 165 Ill., 510; Telephone Co. v. Electric Ry.
Co., 93 Tenn., 503.

Cases cited and distinguished: Pepper v Railroad, 113 Tenn., 53;
State v. Superior Court of Spokane County, 62 Wash., 96; Ligare
v. Chicago, 139 Ill., 46; Schopp v. City of St. Louis, 117 Mo. 131;
Traphagen v. Jersey City, 52 N. J. Law, 67.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
HON. F. H. HEISKELL, Chancellor.

J. GALELLA, J. E. HOLMES, J. S. ALLEN, HENRY CRAFT,
CHAS. M. BRYAN and MARION G. EVANS, for complainant.

H. D. MINOR and CHARLES N. BURCH, for defendants.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

We find a full and accurate statement of the facts of this case in the opinion of the Court of Civil Appeals, as follows:

"The bills in these cases were filed by complainants against defendants Illinois Central Railroad Company and J. H. Weatherford, the purpose of the bills being to enjoin the railroad company from constructing a proposed spur track on Wagner street in the city of Memphis. The cases were consolidated and heard under the above style. Before the final decree, the bills were dismissed as to J. H. Weatherford and he is no longer a party to the cause. The case was heard before the chancellor on oral testimony, exhibits, and documents, and resulted in a decree perpetually enjoining defendant from constructing the proposed spur track, and it is from this decree that defendant has appealed.

"The complainants in the bills are Wm. G. Stewart, J. A. Reichman, H. H. Crosby, Reichman Crosby Co., Linden Station, a corporation, D. W. Fly, W. E. Stansbury, J. T. Fargason & Co., a corporation; M. E. Carter Company, Fly & Hobson Company, Wm. E. Ellis & Sons Iron Works, and Oliver-Finnie Company.

"Some of these complainants are the owners and others are the lessees of certain property on Wagner street. Said street runs north and south. It is the first street east of Tennessee street and the first west of Front street; that is, Wagner street lies between Tennessee street on the

west and Front street on the east, and runs parallel with said two streets. Stating them from north to south, it is crossed by Beale avenue, Linden avenue, Pontotoc avenue, Vance avenue, Talbot avenue, Huling avenue, and Nettleton avenue. It is perhaps crossed by other avenues, but those above named are the only ones that it is necessary to mention. In the city of Memphis the streets run north and south, and the avenues east and west, or practically so.

"The property on the east side of Wagner street and at the corner of Wagner and Beale is owned by complainant Parodie, south of Parodie is the Reichman-Crosby property, south of Reichman-Crosby is the Wm. G. Stewart property, and south of that, fronting on Wagner street, and on the corner of Wagner and Linden avenue, is the Wm. C. Ellis & Sons' Iron Works. The property of Parodie extends from Wagner street to Front street and also has a frontage on the south side of Beale avenue. The property of Reichman-Crosby Company, Wm. G. Stewart, and W. C. Ellis & Sons extends from Wagner street east to Front street, and the Ellis property also has a frontage on Linden avenue of about 200 feet. The Linden Station property is on the west side of Wagner street, and the north and south sides of Linden avenue. It extends from Wagner street west to Tennessee street. The Oliver-Finnie Company is on the west side of Wagner street, about two blocks south of the Linden Station property, extends west from Wagner street to Tennessee street, and is bounded on the north by Vance avenue. This Linden Station Company is a shipping station and is occupied by various ten-

ants, some of whom are parties complainant in these suits. On the Parodie lot at the corner of Beale and Wagner there is a two-story brick business house, on the Reichman-Crosby lot a brick building, a part of which is three-story and another part four-story. On the Stewart lot is a large warehouse. On the W. C. Ellis & Sons' lot is a two-story brick building, and near the southwestern corner of same is a one-story building. In front of the building on the Reichman-Crosby lot is an area or driveway, about seventy-five feet north and south and extending to the sidewalk. Some of the buildings on the lots mentioned are flush with the sidewalk, as may be seen by a series of connected photographs, filed as Exhibit B to the bill in the Wm. G. Stewart case, and also as Exhibit A to the testimony of Mr. Poland. The Parodie property is occupied by a restaurant and rooming house. Reichman-Crosby Company is engaged in the machinery and mill supply business, and they have the Stewart property leased and a part of their business is done in the building on the Stewart property, and in the buildings on the Ellis property is done the business of Wm. C. Ellis & Sons' Iron Works. Oliver-Finnie Company, and Fly & Hobson Company, do a large wholesale grocery business.

"Wagner street is fifty feet wide between property lines. The sidewalk on each side of the street is ten feet wide, making the street proper between sidewalks thirty feet wide. The distance from Beale avenue to Linden avenue is about 370 feet, and from Linden avenue south to the terminus of the proposed spur is about 1,400 feet, and from

Wagner street east to Front street is about 240 feet. The proposed railroad structure begins about 450 feet north of Beale avenue, and runs in such a way that when it reaches Beale avenue it is about twelve feet above the surface of the avenue, that is, it is to be so constructed that persons traveling on Beale avenue will pass under the track and the net clearance is to be not less than twelve feet. From Beale avenue south the track gradually descends until it reaches grade at a point about fifteen feet from the north side of Linden avenue. It crosses Linden avenue at grade and continues at grade to its *terminus*. The block in which is the property of Parodie and other complainants on the east side of Wagner street extends further west than does the block north of this block and on the east side of Wagner. The proposed spur track begins north of Beale avenue and runs on the west side of Wagner street until it reaches Beale avenue, at which point, because of the fact that from there on the east side of Wagner street is more nearly on a line with the west side of Wagner street north of Beale than is the west side of Wagner street south of Beale, and, perhaps, for other reasons, the track passes from the west side to the east side of Wagner, and so continues to its terminus. From Beale avenue to Linden avenue the proposed track is from twelve and one-half to thirteen feet wide; it runs above and upon the sidewalk, and practically against the front of the buildings in the block between Beale and Linden avenues, and extends from two feet, six inches to two feet, nine inches beyond the sidewalk into Wagner street. A short

distance after crossing Linden avenue, the track leaves
the sidewalk and runs on private property to its *terminus*.
From the point where it reaches grade a short distance
north of Linden avenue running back north to a point
where the track will be about five feet from the surface
of the street, it will be on a solid concrete foundation, and
from that point north to Beale avenue it will be supported
by columns or bents, which will be braced by cross-tim-
bers, and the western side of the structure or a part there-
of will be walled up.

"As its authority for constructing the proposed track
in the streets of Memphis, the defendant relies upon a cer-
tain ordinance passed by the city council, or board of com-
missioners, of Memphis.

"As heretofore shown, beginning at Beale avenue and
running south to a point within less than fifty feet of Lin-
den avenue, the defendant proposes to construct its track
above the sidewalk on the east side of Wagner street.
Without detailing the testimony on this subject, it is suf-
ficient to say that the testimony introduced for complain-
ants, as well as that introduced for defendant, shows that
the use of the sidewalk will be completely destroyed, and
the structure will be extended beyond the sidewalk into
the street from two and one-half to three feet, thereby prac-
tically destroying the use of that much of the street. An
effort is made by defendant to show that, at certain places
the abutting property owners on the east side of Wagner
street between Beale and Linden avenues can still effect
entrances to their property, in some places under, and at

other places over, the railroad track, but we think the defendant has not succeeded in this effort. Taking the testimony as a whole, if the proposed spur track is constructed as contemplated and as shown by the blueprints on file in the office of the city engineer, the way of egress from and ingress to the property fronting on the east side of Wagner street, between Beale and Linden, will be destroyed."

There is practically a concurrent finding by the chancellor and the Court of Civil Appeals that said track, if constructed, would occupy exclusively about one-fourth of Wagner street for a distance of about 800 feet, or at least from Beale avenue to Linden avenue, and that such occupation would deprive the public of the use of such part of said street. This finding of fact is well established by the evidence in the cause.

It is also found by said courts, and practically conceded by the railroad company, that the ingress and egress of several of the complainants owning property on the east side of Wagner street, between Beale avenue and Linden avenue, will be seriously interfered with, if not destroyed, by the construction of said road.

Upon the foregoing facts it is insisted by the complainants that upon the authority of *Pepper* v. *Railroad,* 113 Tenn., 53, 85 S. W., 864, they are entitled to an injunction perpetually enjoining the railroad company from constructing said track.

In the Pepper Case, such an injunction was granted inhibiting the railroad from laying its track on Tennessee

street, there already being two tracks on said street, upon the ground that such third track would destroy the public use of the street.   The court said:

"But what we hold is that a public street, either with or without the consent of municipal authorities, cannot be converted into a mere roadbed for railroad tracks, over which trains will be constantly operated, to the destruction of the public use, and of the business and property interest of those abutting thereon.   Such an appropriation is a complete subversion of the purpose for which the street was opened, and in a case where no damages properly recoverable by these property holders would be commensurate with the injury sustained a court of equity on reason and authority should intervene for their protection."

The difference in that case and the one under consideration is simply as to the *quantum* of the street destroyed; but the principle involved is, in our opinion, the same, for, if the city has authority to permit the railroad to appropriate to its exclusive use one-fourth of the street, it can authorize an appropriation of one-half, and if of one-half, then of the whole.

In *State* v. *Superior Court of Spokane County*, 62 Wash., 96, 113 Pac., 576, the court said:

"It is strenuously urged that these statutes confer upon the city council the power to grant to the railway company the exclusive use of a portion of this avenue in the manner contemplated by this ordinance.   If this power is vested in the council, then, by the mere passage of an ordi-

nance to that effect, any street in any city . . . can be surrendered wholly to any railway company to the entire exclusion of ordinary highway travel, and its use as a public highway thus be absolutely destroyed. The most important metropolitan thoroughfare in the State would have to yield its life as a public street to this power, if the city council sought to exercise it. . . . The fact that only half of this avenue is here sought to be devoted to a purpose which prevents the use of that portion as a street is of no consequence in this inquiry, for this is a question of power. And the power which can thus take such portion can take all."

In Elliott on Roads & Streets (2d Ed.), 645, the author said: "Public highways belong from side to side and end to end to the public, and any permanent structure which materially encroaches upon a public street and impedes travel is a nuisance, *per se,* and may be abated notwithstanding spaces left for the passage of the public. This is the only safe rule, for if one person can permanently use a highway for his own private purposes, so may all, and if it were left to the jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law, and what was at first a matter of small consequence would soon become a burden, not only to adjoining owners but to all the taxpayers and the traveling public as well. Thus, expediency forbids any other rule but, even if it did not, the rule is well founded in principle, for it is well settled that the public are entitled not only

to a free passage along the highway but to a free passage along any portion of it not in the actual use of some other traveler, and if this be true it necessarily follows that there can be no rightful permanent use of the way for private purposes."

In *Ligare* v. *Chicago*, 139 Ill., 46, 28 N. E., 934, 32 Am. St. Rep., 179, the city of Chicago passed two ordinances on the same date, each referring to the other, which the Supreme Court of Illinois held to be in fact one single ordinance. In the first ordinance the city widened Archer avenue for a certain distance, from sixty feet in width to 160 feet. By the two ordinances, the city authorized the railroad company to use ninety feet of the street so widened upon which to lay its railroad tracks, leaving seventy feet for the use of the public. The ordinance also provided that the seventy feet of the street for the use of the public should be separated from the ninety feet for the use of the railroad tracks by a stone or brick wall, ten or twelve feet in height. The court said:

"Hemmed in by the wall on the one side and by the buildings or inclosures on private property on the other, no rational being would, at the risk of the inevitable dangers from passing engines and cars, use this part of the street as a common highway, unless under stress of most extraordinary circumstances. It is not material that the public are not, by the words of the ordinance, forbidden the use of this part of the street. The effect of the grant is inevitably an exclusion of all but these railroads from its use, and the law deals with results, and not with mere

forms, in such matters. Undoubtedly, it has been held in many cases in this court that it is a legitimate use of a street to allow a steam railroad track to be laid and oper· ated upon it, when there is legislative authority there- for, but it has never been held that under legislative au- thority merely authorizing tracks to be laid in streets, it is competent for a municipality to grant the exclusive use of a street to a railroad company."

In *Schopp* v. *City of St. Louis,* 117 Mo., 131, 22 S. W., 898, 20 L. R. A., 783, the city of St. Louis, by ordinance, set apart a portion of Third and Broadway streets as a place for markets, and authorized the comptroller to lease market stands in and along that portion of the streets to vendors of produce. Several property owners along said streets filed an injunction bill. The court said:

"An abutting property owner has the same right to the use of the street that the public have, and, in addition thereto, he has rights which are special to himself, as the right of ingress and egress, and this right is a property right which he may protect. *Ferrenbach* v. *Turner,* 86 Mo., 416, 56 Am. Rep., 437; *Glaessner* v. *Anheuser Busch Brew. Ass'n,* 100 Mo., 508. An obstruction in a street or highway may be both a public and a private nuisance, and in such cases the private citizen who is specially injured may have injunctive relief. *Glaessner* v. *Anheuser Busch Brew. Ass'n, supra; McDonald* v. *Newark,* 42 N. J. Eq., 136; Elliott, Roads & Streets, 496. That the plaintiffs here are specially injured admits of no doubt, but it is in- sisted by the defendants that the city of St. Louis has the

right and power to lease out portions of the street sur-
face to hucksters and others for market purposes, and
whether the city has such right is the real question in this
case."

The court further said: "This power to regulate the use
of streets is not confined to the regulation of travel there-
on, but under it the city may allow gas, water, and sewer
pipes to be laid therein, and may cause wells therein to
be filled (*Ferrenbach* v. *Turner, supra*), and may permit
the erection and maintenance of telephone poles thereon.
*Julia Bldg. Ass'n* v. *Bell Teleph. Co.*, 88 Mo., 258, 57 Am.
Rep., 398. All these uses are consistent with the uses for
which streets are acquired or dedicated. But it does not
follow from anything said in any of the cases just cited
that the city may lease out portions of the streets for
hucksters' stands and stalls.

"A general power to regulate the use of streets cannot
and ought not to be construed to give the city a right to
create a nuisance in the streets, or to devote them, or any
part thereof, to any purpose inconsistent with the right
of the public or abutting property owners. The 'public
highways belong, from side to side and end to end, to the
public,' and 'the public are entitled, not only to a free pass-
age along the highway, but to a free passage along any
portion of it, not in the actual use of some other traveler,'
and the abutting property owner has the right to the free
and unobstructed passage to and from his property."

In *Traphagen* v. *Jersey City*, 52 N. J. Law, 67, 18 Atl.,
586, 696, the court said: "There are a number of uses to

which the owners of lands bordering upon the street can resort to; among such are the placing of building materials, or of wood or coal temporarily in the street, until such material can be used, or the coal or wood stored for use. So, the retention of wagons upon the street until they can be loaded or unloaded in front of places of business is a use of similar character which seems to be legitimate without legislative sanction, subject to control by the municipality under its power to regulate. But the structure which the ordinance in question permits, and which the railroad company has erected, is not a use of the street of the kind already mentioned. The result of the construction of this freight platform and roof is to exclude public travel from the sidewalk of Tenth street and devote it to the private business of the railroad."

Mr. Dillon, in his Work on Municipal Corporations (5th Ed., section 1241), states the rule as follows: "Hence authority conferred upon a municipality to grant the right to construct, or to consent to the construction of any kind of railroad in a city street, is limited in its scope to the grant of a right which permits the concurrent use of the street by the railroad and by the public, and the municipality has no power thereunder to confer upon a railroad company the right to so occupy the street with its tracks as to destroy the street for purposes of travel and to exclude the public therefrom"—citing many authorities.

Some of the foregoing cases were cited with approval in the Pepper Case.

Counsel for the railroad company cite *Doane* v. *Elevated Railroad,* 165 Ill., 510, 46 N. E., 520, 36 L. R. A., 97, 56 Am. St. Rep., 265, as announcing a contrary doctrine. That case involved the right to construct an elevated railroad in the city of Chicago, and in its facts differs materially from the case under consideration, and it would be a useless consumption of time for us to discuss the power of the city of Memphis to authorize the construction of an elevated railroad though its crowded thoroughfares, such as may be seen in New York or Chicago.

It is insisted by the railroad that the erection of light and telephone and electric railway poles is an exclusive use of parts of the street.

This question is put at rest by the case of *Telephone Co.* v. *Electric Ry. Co.,* 93 Tenn., 503, 29 S. W., 104, 27 L. R. A., 236, in which it was held that the erection of poles is not an additional servitude upon the fee within the streets, but is a legitimate use of the streets within the original, general purpose of their dedication. Such poles are usually placed in the edge of the road or street, and interfere so little with the use of the streets by the public as to be of no consequence. If they were so erected as to seriously impair the use of the street, a case for judicial relief would arise.

The conclusions reached appear to us sound upon principle, and are well sustained by the authorities.

Other questions, including the validity of the ordinance by virtue of which the railroad company acted, are presented by the record, but need not be determined, since the

question of exclusive use is determinative of the cause. We are of the opinion that to permit the construction of this track as contemplated by the plans and blueprints, as submitted, would amount to an appropriation of the exclusive use of one-fourth of a part of Wagner street by the railroad company, and we are of the opinion that the city of Memphis is without authority to grant the railroad company such exclusive use. The Court of Civil Appeals and the chancellor so held, and their decrees are affirmed.