## M. L. THORNTON v. R. G. CONNELLY.

Middle Section. September 1, 1932.

Petition for Certiorari denied by Supreme Court, January 21, 1933.

R. L. Peery, of Centreville, for appellant.
Hobart C. Connelly, of Centreville, for appellee.

FAW, P. J. The complainant, M. L. Thornton, sought by the bill in this case to obtain an injunction inhibiting and restraining the defendant R. G. Connelly from erecting a building about eighteen feet wide and thirty feet long on a certain parcel of land in the village of Lyle, in Hickman County, Tennessee, to be used as a "filling station" for the sale of gasoline, lubricating oils, and other automobile supplies.

On final hearing, the Chancellor dismissed the bill at the cost of the complainant, except that he adjudged that defendant pay the cost of his own witnesses. The complainant appealed to the Supreme Court and assigned errors there, but the case was transferred to this Court and has been heard here on assignments of error of appellant Thornton, and briefs and oral argument of counsel on behalf of the parties, respectively.

The theory of complainant's bill as originally filed was that he was the owner in fee simple and in possession of the parcel of land described in the bill when defendant unlawfully entered thereon and commenced to lay the foundation for said building intended as a "filling station;" and in its allegations and prayer the original bill was in the nature of a suit in ejectment and to enjoin trespass on complainant's land.

Subsequently complainant, by leave of the Court, amended his bill so that it was, in effect, converted into a bill to enjoin defendant from obstructing an alleged public road on which complainant's land abutted.

Before proceeding further with the statement of the issues, we will state briefly certain undisputed facts out of which this litigation arose.

Laying aside for the present the disputed question as to whether the public had, by prescription, an easement of roadway thereon, all of the land involved in this suit belonged to defendant Connelly on and prior to August 31, 1918; but on that date defendant and his wife conveyed by deed to Larkin L. Lyle a certain tract or parcel of land in Hickman County, Tennessee, described as follows:

"Beginning at a stake at the northwest corner of Jerome Martin's north boundary line at his front fence; runs thence with said Martin and Henry Taylor's line 380 feet to a stake; runs thence north 30 deg. west 154 feet to a stake, runs thence a southwestern direction 369 feet to a rock; runs thence south 30 deg. west 166 feet to Martin's line or the beginning, containing by estimation two acres more or less."

Said deed shows by its recitals that there was at the time of its execution a dwelling-house, a store-house, a barn, and other "out-houses" on the land thereby conveyed.

On November 13, 1924, Larkin L. Lyle and his wife executed a deed purporting to convey to complainant M..L. Thornton a parcel of land in the Fifth Civil District of Hickman County, Tennessee, described as follows:

"Beginning at the N. W. corner of Jerome Martin's N. B. line as established by Wilson Pell, County Surveyor for Hickman Co., Tenn., on Oct. 30, 1924, thence with Martin's and

Bishop's line to a stake in Bishop's line, thence with Bishop's line to a stake in Connelly's line; thence with Connelly's line to the railroad right-of-way; thence with the railroad right-of-way to the beginning corner, containing by estimation two acres, more or less."

The deed of Lyle to Thornton, supra, although it purported to convey more, was effective to convey only the land acquired by Lyle through his said deed from defendant Connelly, and no more, for the reason that Lyle owned no land adjoining the parcel described in his said deed from Connelly. Hence, complainant Thornton is not the owner of the parcel in controversy unless it was conveyed by defendant Connelly to Lyle by the deed of August 31, 1918.

We recur now to the pleadings, which are brief. In the first paragraph of the bill it is stated that complainant and defendant are both residents and citizens of Hickman County, Tennessee.

In the second paragraph of the bill it is alleged that complainant is the owner in fee simple of a certain lot or parcel of land situated in the village of Lyle, in the Fifth Civil District of Hickman County, Tennessee, located upon which is the residence of complainant where he and his family now reside, and also a store-house in which he conducts a general retail mercantile business, and other out-buildings, such as necessary for the use and convenience of said home and store-house.

It is then alleged that said lot or parcel of land is bounded and described as follows:

"Beginning at the North West corner of Jerome Martin's N. B. line, established and agreed upon, on Oct. 30, 1924, thence East with said Martin's N. B. line to a stake in Bishop's line; thence North with Bishop's line to a stake in the line of the said R. G. Connelly; thence West with his line to the right of way of the N. C. & St. L. Railway Co., used for a switching or spur track; thence South with said railroad right-of-way to the beginning, containing by estimation two acres more or less."

Complainant then states that the boundary lines of said lot, as above described, may not run due east and west or due north and south, but said lot is bounded on the south by said Jerome Martin, on the east by the land or lot of Bishop, on the north by the land or lot of defendant, and on the west by the railroad right-of-way.

Complainant alleges further that he and his immediate predecessor in title and vendor have been in the actual possession and use of said lot and all the buildings thereon for a period of more than seven years, under registered general warranty deeds, claiming and occupying the said residence as a home, and occupying and using said store-house as a place of business, adversely, openly, notoriously and continuously for more than seven years.

In the third paragraph of the bill it is alleged that the defendant, under some kind of pretext or claim of right, has entered upon the western part of said lot, adjacent to and near said railroad right of way, directly in front of and near complainant's store-house and home, and is proceeding, his agents, himself and employees, to excavate, construct and build thereon a filling station for the purpose of vending gasoline and lubricating oils to the general public, to be used in automobiles and other motor vehicles; and to erect thereon a house or houses, shed or sheds, necessary to conduct said business, and keep stored in tanks and barrels gasoline and lubricating oils, together with all pumps and fixtures used in connection with said business, to the great injury of complainant's business and the endangering of his store-house and home; thus subjecting complainant and his family to extra risk and hazard, and to be continually annoyed and disturbed by motor vehicles at said station, and depriving complainant of the right to the use of his own property as a right-of-way to and from said spur track and for any other purpose, to his great injury and loss, which will be irreparable unless the defendant is restrained by injunctive process of the Court.

Defendant answered the foregoing bill, and, in his answer, he admits that complainant is the owner of a certain lot or parcel of land situated in the village of Lyle, and that there is located upon said lot a residence in which the complainant and his family reside, and also a store-house in which the complainant conducts a general mercantile business; but defendant denies that the boundaries as set out in complainant's bill are true and correct as to the lot owned and occupied by complainant. Defendant also denies that complainant and his immediate predecessor in title has held, occupied and possessed said lot, as set out in paragraph two of said bill, openly, adversely and continuously for a period of more than seven years under registered deed or deeds.

Defendant admits that he sold and conveyed to L. L. Lyle, complainant's immediate predecessor in title, the greater portion of said lot as described in complainant's bill, but did not convey to Lyle a certain strip or part adjoining the spur track of the N. C. & St. L. Railroad, but in selling and conveying to the said Lyle, defendant began at Jerome Martin's northwest corner at his front fence, then ran eastward, thence northward, and then in a western direction to an iron pin, and then in a southern direction to the beginning; thus omitting from said deed said disputed strip of land, which defendant purposely reserved for a passageway to his land lying north, for his own convenience and others to and from his land.

Defendant admits, in his answer, that he was preparing to build a house and shed on said strip of land, but denies that he had en-

tered upon the land of complainant for the purpose of erecting said buildings. He admits that said building was to be used for a filling station, where gasoline would be stored in underground tanks of the most approved method, to be sold to the general public, and lubricating oils would be stored in barrels and tanks for sale to the public, but he denies that engaging in said business would annoy and disturb complainant and his family, or add any hazard or risk to complainant's building, or interfere with the use and enjoyment of complainant's store-house and dwelling. Defendant admits that said filling station would be equipped with necessary pumps and all other fixtures required in such business, but denies that complainant would be injured in said business or molested in his home, or suffer irreparable loss therefrom.

Upon the issues thus made by the bill and answer, the case went to trial before the Chancellor on oral testimony of witnesses heard in open court, and at some time during the trial complainant was, on his application, permitted by the Court to amend his bill by adding to paragraph III the following, viz:

"The complainant avers and states that the excavation, foundation and erection of said filling station, as contemplated by the defendant, is an invasion of the public road leading from the depot, the southern portion of the village of Lyle, and, also, from the plant and village of Wrigley to the Post Office. Said road has been used by the public for at least forty years, and that the defendant recognized said road as a public road when he sold and conveyed said lot to L. L. Lyle, complainant's immediate predecessor in title, by purposely, at the time, dedicating this strip of land to the public for a road, or passageway. Complainant now states and avers that the foundation of said proposed filling station is located on a part of this public road."

Thereafter, viz: on July 7, 1931, a final decree was entered in the cause, as follows:

"This cause was heard on the original bill and amendment thereto, the answer of defendant and the oral testimony of witnesses heard by the Court from which it appears that the complainant sues the defendant for the recovery of the following described lot of land in the town of Lyle, Hickman County, Tennessee: beginning at the N. W. corner of Jerome Martin's N. B. line, as established by Wilson Pell, County Surveyor for Hickman Co., Tenn., on Oct. 30, 1924, thence with Martin's and Bishop's line to a stake in Bishop's line, thence with Bishop's line to a stake in Connelly's line; thence with Connelly's line to the railroad right-of-way; thence with the railroad right-of-way

to the beginning corner, containing by estimation two acres, more or less.

"The answer disclaims as to all of said land except a strip on the west side of land bounded by said R. R. right-of-way. The proof shows that prior to —— day of ——, 1918, defendant owned all the said land, for and on that day defendant sold to L. L. Lyle a portion of said land described as follows: Beginning at a stake at the N. W. corner of Jerome Martin's N. B. line at his front fence; runs thence with said Martin and Henry Taylor's line 380 feet to a stake; runs thence north 30 deg. W. 154 feet to a stake; runs thence a southwestern direction 369 feet to a rock; runs thence south 30 deg. W. 166 feet to Martin's line, or the beginning, containing by estimation two acres, more or less.

"That defendant never conveyed to Lyle or anyone else the strip now in controversy, which is thus described: Beginning at a stake or iron pin, the N. W. corner of the land conveyed by defendant to said Lyle, and runs S. 30 W. 166 feet to Jerome Martin's N. B. line at his front fence; thence with Martin's line west to the said Railroad right-of-way; thence with said right-of-way to a point directly opposite the said N. W. of said Lyle land and directly in line with the N. B. of said Lyle land. The title to this strip was retained by defendant as a passageway for himself or anyone who wanted to pass over it.

"During the progress of suit it became apparent that complainant had no title to said land in controversy. Whereupon complainant amended his original bill so as to charge that said land in controversy had been a public road for many years and that when defendant conveyed to Lyle he dedicated said land to the public as a road or passageway, and that the building, the construction of which was enjoined by the original bill, is in said road.

"On the hearing at the July Term, 1929, complainant's bill as amended was dismissed, the injunction dissolved, and complainant taxed with all the costs except the cost of defendant's witnesses, which was taxed against defendant.

"Complainant then moved the Court for a new trial on the following grounds:

"In this cause comes the complainant and moves the Court for a new trial, and for grounds of said motion says:

"1. The Court was in error in ruling and holding that the beginning corner of the lot or tract of land conveyed by the defendant, R. G. Connelly, to Larkin L. Lyle, Ex. No. 2 to testimony of the complainant, was at the front fence of the lot owned

by Jerome Martin, and in not holding and ruling that the beginning corner was at the N. W. corner of said Martin's lot, as set out and described in said deed Ex. No. 2 which was settled and established at the edge of R. R. right-of-way.

"2. The Court erred in not holding and ruling that the public had acquired an easement by prescription over the part of the land in dispute for a public road, and in not holding that the defendant had no right to obstruct any part of said road, because said road had been used openly, continuously, and adversely by the general public for a period of more than twenty years.

"3. The Court erred in not holding that the defendant had by his sworn admission in his answer, and by his acts and conduct dedicated the land in dispute to the public for a right-of-way along and over that portion contiguous to the R. R. right-of-way and in not holding that the defendant had no right to obstruct the same or any part of it.

"4. The Court erred in dismissing complainant's bill, but should have sustained the bill and decreed a perpetual injunction because the evidence shows that this easement, or road, was used by the public long before the defendant became the owner of said land, and by his conduct, acts, and acquiescence as well as by his admission, he had dedicated this land lying along and adjacent to the R. R. right-of-way to the public for a road.

"5. The Court was in error in holding that while the defendant had dedicated a passageway for himself and the public, but that the erection of the proposed filling station was not an unreasonable interference with said right-of-way because the defendant by his answer says he excluded this land purposely for a right-of-way, which exclusion embraced the whole portion of land along and adjacent to the R. R. right-of-way and not any particular part of it.

"The motion was argued and the record retained by complainant's counsel for the purpose of filing a brief. Later said counsel had the misfortune to lose his office by fire when said record was entirely destroyed.

"The record has been supplied and sent to the Chancellor since the last term.

"The motion for a new trial is overruled:

"1. Because the preponderance of the evidence shows that the complainant has no title to any portion of the land in controversy, nor any right to the possession thereof.

"2. Because the evidence fails to show that an easement over said land was ever acquired by the public, or that the public had ever in any way used said land adversely to right of the owner.

"The 3, 4 and 5 grounds of the motion are overruled because the proof shows complainant's access to his property is not cut off, or that his ingress and egress to and from his property have been interfered with, or that he has sustained any injury that is not shared by the general public.

"The motion for a new trial is overruled, and it is adjudged and decreed that complainant's bill be and it is hereby dismissed, and the injunction heretofore granted dissolved. It is further decreed that defendant recover of complainant all the costs of the cause except the cost of the defendant's witnesses, which will be paid by defendant.

"For all of which let execution issue.

"From all of which ruling and holding the complainant excepts and prays an appeal to the next term of the Supreme Court to be held at Nashville, Tenn., which is by the Court granted, and upon motion and for good cause appearing, the complainant is allowed thirty days in which to execute the proper bond and prepare and file bill of exceptions."

The first assignment of error is that the Chancellor erred in holding that the beginning corner of the land which defendant conveyed to Larkin L. Lyle by the deed of August 31, 1918, was at the northwest corner of Jerome Martin's front fence, instead of at Jerome Martin's northwest corner.

Jerome Martin's northwest corner, according to his title papers, was in the east boundary line of the right-of-way of the railroad spur track, and the northwest corner of his front fence was east (not due east, but in that general direction) of said railroad right-of-way a distance of nineteen feet.

As hereinbefore shown, the land conveyed by defendant Connelly to L. L. Lyle in 1918 was described as "Beginning at a stake at the northwest corner of Jerome Martin's north boundary line at his front fence," etc.

We find that it appears from the decided weight of the evidence touching the application of the aforesaid description to the land in controversy that the parties to said deed of August 31, 1918, intended and understood that the beginning corner was at the northwest corner of Jerome Martin's front fence, which was nineteen feet east of the railroad right-of-way.

Moreover, the allegation in complainant's amendment to his bill that when defendant sold and conveyed said lot to L. L. Lyle, he (defendant), at that time, dedicated the strip of land in controversy

to the public for a road or passageway, is inconsistent with, and therefore an abandonment of, the claim in his original bill that he (complainant) is the owner of the "strip" of land on which defendant is proposing to build a filling station. The first assignment of error is overruled.

It is doubtful whether the bill, as amended, alleges that the public had acquired a roadway by prescription over the disputed land prior to the deed from defendant Connelly to Lyle in 1918, as asserted in the briefs and argument for complainant. But whether a prescriptive easement is sufficiently pleaded or not, we are of the opinion that the weight of the proof shows a mere permissive use of said strip of land by the public as a passageway prior to defendant's conveyance to Lyle in 1918. Such is our conclusion after a consideration of all the evidence, and we need not review the evidence in detail. The second and fourth assignments of error are overruled.

The remaining two assignments of error may be considered together. The third assignment is that the Court erred in not holding that the defendant had, by his own admission in his answer and by his acts and conduct, dedicated the land in dispute to the public for a right-of-way along and over that portion contiguous to the railroad right-of-way, and in not holding that the defendant had no right to obstruct the same or any part of same.

And the fifth assignment is that "the Court was in error in holding that while the defendant had dedicated a passageway for himself and the public, but that the erection of the proposed filling station was not an unreasonable interference with said right-of-way, because the defendant by his answer says he excluded this land purposely for a right-of-way, which exclusion embraced the whole portion of land lying along and adjacent to the railroad right-of-way and not any particular part of it."

We find from the weight of the proof that defendant Connelly dedicated the disputed strip of land to the public as a roadway at the time he made said deed to Lyle in 1918. In his answer to the original bill (before complainant introduced the amendment alleging that defendant dedicated the disputed strip to the public for a roadway), defendant states that he purposely omitted said strip of land from the deed to Lyle "for a passageway to his land lying north, for his own convenience and others to and from his land." Johnson City v. Wolfe, 103 Tenn., 277, 52 S. W., 991.

In his testimony at the trial, defendant stated that he told Lyle, at the time of the conveyance in 1918, that he (defendant) wanted to keep that space (referring to the disputed strip of land) in order to have a good outlet and inlet to his property—in other words, that he was reserving a mere private passageway that he

might close up at will—but we are satisfied from the whole proof that Lyle understood, from the statements of defendant Connelly, that the strip of ground between the front of the lot he was buying and the railroad right-of-way was to be a public road; otherwise he would have been buying a store-house, a dwelling, and a garage, situated on a lot fronting on the private property of defendant Connelly.

The railroad right-of-way is fifteen feet wide, or seven and one-half feet from the center of the track. The space between complainant's western property line (as located by the deed from defendant to Lyle) and the front of the complainant's proposed filling station is from six and one-half to eight feet. The distance is greater to complainant's front fence as it now stands, as complainant had moved his front fence back several feet on his own land, in order to afford a parking space for vehicles in front of his store and residence, before defendant begun the erection of his building, but not for the purposes of a public road or street.

Upon the facts as we have found them, the complainant has a greater interest in the road or street upon which his property abuts, both in kind and degree, than the general public, and he therefore has the right to maintain a suit to enjoin the obstruction of such road or street. Stewart v. Ill. Cent. R. Co., 143 Tenn., 146, 156, 225 S. W., 1042; Day-Evans Iron Works v. L. & N. R. Co., 161 Tenn., 649, 652, 32 S. W. (2d), 1038; Blake v. Skelton, 5 Tenn. App., 539, 553; Hill v. Hoffman (Tenn. Chy. App.), 58 S. W., 929, 932; Morgan County v. Goans, 138 Tenn., 381, 383, 198 S. W., 69.

The third and fifth assignments of error are sustained, and the decree of the Chancery Court dismissing the complainant's bill at complainant's cost is reversed, and injunction will be made perpetual as prayed for in complainant's bill.

The costs of the cause, including the costs of the appeal, will be adjudged against the defendant R. G. Connelly.

Crownover and DeWitt, JJ., concur.