SCHOPP v. THE CITY OF ST. LOUIS, *et al.*, Appellant.

### Division One, June 19, 1893.

1. **City:** PUBLIC STREET: RIGHTS OF ABUTTING PROPERTY OWNERS. An abutting property owner on a street in a city has equal right with the public to use the street, and, in addition thereto, he has certain rights which are special to himself, *e. g.*, that of ingress and egress.

2. ———: ———: NUISANCE: INJUNCTION. An obstruction in a street or highway may be both a public and a private nuisance, and in such case the private person who suffers a special injury may have injunctive relief.

3. **St. Louis City Charter:** LICENSING PRODUCE DEALERS: STREETS: NUISANCE. The St. Louis city charter (art. 3, sec. 16), giving the city power "to regulate the use of streets," does not authorize it to enact an ordinance for the leasing of spaces on a street in front of business houses for produce dealers, such use of the street being unlawful and a nuisance to the abutting property owners and the public.

4. ———: ———: INJUNCTION. Injunction will lie in such case on behalf of the abutting property owners against the city to prevent it from leasing the stands in front of their property to the produce dealers.

*Appeal from St. Louis City Circuit Court.*—HON. J. E. WITHROW, Judge.

AFFIRMED.

*W. C. Marshall* for appellant.

(1) The circuit court erred in excluding the ordinance provisions set up in the answer. (2) The judgment of the circuit court on the facts in evidence should have been for defendants. The evidence discloses that

117  131
122  100

117  131
126   37

117  131
134  561

117  131
137  537
68a 650

117  131
140  637

117  131
73a 350

117  131
150 465

117  131
153  573

117  131
161  383
161  397

117  131
88a 311

117  131
98a ¹615

117  131
179  ¹708

so far as the plaintiffs are concerned, the city had not for two years prior to the institution of this suit rented out any stands to hucksters in front of plaintiff's property. The plaintiffs testified that wagons did stand in front of their places of business, but they never showed in any manner whatever, although counsel during the progress of the case intimated that he would so show, that such persons stood there by any authority from the city. This case, therefore, must be determined upon the right of any citizen without any special interest, to maintain an injunction to prevent the city from establishing such a produce exchange on the street, or to require the city to keep all of the streets wholly unobstructed, and not allow any vehicles to stand on the street any longer than is necessary to deliver and receive goods. The ordinance makes a wise and beneficent muncipal regulation, enuring, unquestionably, to the benefit of the people of the city, and without which competition would be stifled, and a few persons would be enabled to put up the price of necessary culinary articles.

*Thomas B. Harvey* for respondents.

(1) The authority conferred upon the city of St. Louis, "to regulate the use of" its streets, contemplates only such uses as are consistent with the purpose for which the streets were dedicated, and uses to which they may be properly applied as such; and the ordinance provisions authorizing the renting of permanent wagon stands on said streets are unconstitutional and void. Constitution of Missouri, art. 2, secs. 20 and 21; 1 Dillon on Municipal Corporations, sec. 383; 2 Dillon on Municipal Corporations, secs. 587*b*, 680, 683, 697 and 730, and citations; Angell on Highways, secs. 223 and 226; Tiedeman's Limitations Police Power, p. 312;

*Thurston v. St. Joseph,* 51 Mo. 517; *Sugar Ref. Co. v. Elevator Co.,* 82 Mo. 127, and citations; *Glasgow v. St. Louis,* 87 Mo. 678; *Building Association v. Tel. Co.,* 88 Mo. 258; *Cummings v. St. Louis,* 90 Mo. 264 and 265 and citations; *Callanan v. Gilman,* 107 N. Y. 360; *William v. Railroad,* 16 N. Y. 97; *People ex rel. v. Mayor,* 59 Howard, 277; *McCaffrey v. Smith,* 41 Hun 117; *Turner v. Holtzman,* 54 Md. 148; *State v. Laverack,* 34 N. J. Law, 202; *Wartman v. City,* 33 Pa. St. 202; *Rex v. Cross,* 3 Camp. 224; *Knox v. Mayor,* 55 Barb. 404; *Wilder v. DeCou,* 26 Minn. 10; *Green v. Oakes,* 17 Ill. 249; *Craig v. People,* 47 Ill. 487. (2) And if the city of St. Louis had the authority to rent out or let wagons stand upon the public streets, it could not lawfully so exercise that authority as to create a public nuisance. 2 Dillon Municipal Corporations, sec. 660; *State v. Turner,* 21 Mo. App. 324; *State v. Gilbert,* 73 Mo. 20; *State v. Ramsey,* 76 Mo. 398; *Edmundson v. Moberly,* 98 Mo. 523; *Glessner v. Brewing Ass'n,* 100 Mo. 508.

BLACK, P. J.—The city of St. Louis, by an ordinance enacted in due form of law, set apart that portion of Third and Broadway streets between Christy avenue and Howard street, as a market "for farmers and other wagons bringing produce to market for sale;" and by ordinance gave the comptroller power to lease stands on and along that portion of the streets to such vendors of produce. The comptroller gave public notice that he would on a given date lease the stands for one year from the first of April, 1890; and thereupon the plaintiffs brought this suit to enjoin the defendants from leasing stands in front of their property. The court awarded a perpetual injunction as prayed for and the defendants appealed.

The evidence discloses the following further facts: Third and Broadway constitute one continuous street. The plaintiff, Conrad Schopp, owns a parcel of land with a building thereon fronting twenty feet on the west side of Third street, and the plaintiffs Lewedag & Co., are his tenants. The plaintiff, Jacob Schopp, owns another parcel with buildings thereon fronting on the east side of Third street, occupied by the plaintiffs, the Jacob Schopp & Brother Fruit and Produce Company, a corporation organized under the laws of this state. These tenants are engaged in the business of buying and selling, at wholesale and retail, fruits, vegetables and other garden produce. They carry on a large business. The street in front of their buildings is from fifty-five to sixty feet wide, and has become a crowded thoroughfare for wagons and loaded vehicles because of cable railroads and the grades on adjacent streets. For four years prior to the commencement of this suit, the city had annually leased to hucksters spaces in front of the property owned and occupied by the plaintiffs, about ten feet wide and extending from the curb out into the street a distance of fifteen or seventeen feet. Spaces of ten to twenty feet wide were left between the spaces so leased. The hucksters and others leasing the spaces come in on all week-days before daylight, and back their wagons in on the leased spaces up against the curb. They stand on the sidewalk and sell their produce from their wagons. As a rule, they remain until eight or nine o'clock in the forenoon, but it appears they often remain until three o'clock in the afternoon. The proof is clear to the effect that these market wagons materially interfere with the business carried on by the plaintiffs, by causing the street to become blockaded; and they render it difficult and often impossible for the plaintiffs to get their wagons up to the curb in front of their houses.

Parts of these streets between Christy avenue and Howard street have been used for such market purposes since 1861, and perhaps longer, but the street in front of the buildings owned and occupied by the plaintiffs was not so used until four years before the commencement of this suit.

An abutting property-owner has the same right to the use of the street that the public have, and, in addition thereto he has rights which are special to himself, as the right of ingress and egress, and this right is a property right which he may protect. *Ferrenbach v. Turner*, 86 Mo. 416; *Glaessner v. Brewing Ass'n*, 100 Mo. 508. An obstruction in a street or highway may be both a public and a private nuisance, and in such cases the private citizen who is specially injured may have injunctive relief. *Glaessner v. Brewing Ass'n, supra; McDonald v. Newark*, 42 N. J. Eq. 136; Elliott on Roads and Streets, 496. That the plaintiffs here are especially injured admits of no doubt, but it is insisted by the defendants that the city of St. Louis has the right and power to lease out portions of the street surface to hucksters and others for market purposes, and whether the city has such right is the real question in this case.

The scheme and charter of the city of St. Louis gives to it, among others, the following powers: *First*, "to establish market places and meat shops, and license, regulate, sell, lease, abolish, or otherwise dispose of the same;" *second*, "to designate the place where such articles shall be sold," that is to say, "meat, poultry, fish and vegetables;" and *third*, "to regulate the use of the streets." The powers conferred by the first and second of the above paragraphs are expressed in general words, and it cannot be said that they give the city any power to convert the public streets into market places. Says Dillon: "But power to a munici-

pal corporation to establish markets and build market houses will not give 'the authority *to build on a public street.* Such erections are nuisances though made by the corporation,. because the street, and the entire street, is for the use of the whole people. They are nuisances when built upon the streets, although· sufficient space be left for the passage of vehicles and persons. Dillon on Municipal Corporation [4' Ed.], sec. 383.'' And· the text has the support of the following cases: *Wartman v. Philadelphia,* 33 Pa. St. 202-210; *State v. Mobile,* 5 Port. (Ala.) 279; *State v. Laverack,* 34 N. J. Law 201. The case last cited goes much further and holds that the legislature has no power to authorize a market to be held in a public street of a city, without providing for compensation to abutting property owners, as to which proposition we express no opinion in the present case. If the city has any power to lease out portions of the street surface to hucksters, it arises from the power ''to regulate the use of streets.''

This power to regulate the use of streets is not confined to the regulation of travel thereon, but under it the city may allow gas, water and sewer pipes to be laid therein and may cause wells therein to be filled (*Ferrenbach v. Turner, supra*) and may permit the erection and maintenance of telephone poles thereon. *Julia Building Ass'n v. Telephone Co.,* 88 Mo. 258. All these uses are consistent with the uses for which streets are acquired or dedicated. But it does not follow from anything said in any of the cases just cited that the city may lease out portions of the streets for huckster stands and stalls. A general power to regulate the use of streets cannot and ought not to be construed to give the city a right to create a nuisance in the streets, or devote them or any part thereof to any purpose inconsistent with the right of the public or abutting property owners. The ''public highways

belong, from side to side and end to end, to the public," and "the public are entitled, not only to a free passage along the highway but to a free passage along any portion of it not in the actual use of some other traveler," and the abutting property owner has the right to the free and unobstructed passage to and from his property.

Said Lord ELLENBOROUGH in *Rex v. Cross*, 3 Camp. 224, "And is there any doubt that if coaches on the occasion of a rout, wait an unreasonable length of time in the public street, and obstruct the transit of his Majesty's subjects who wish to pass through it in carriages or on foot, the persons who cause and permit such coaches so to wait are guilty of a nuisance?" Teamsters may not unreasonably block the public way or stop their teams and vehicles for such a time and in such a place as to unreasonably interfere with the public travel. Elliott on Roads and Streets, 481, and cases cited. Other cases are more directly in point here. Thus in *McDonald v. Newark*, 42 N. J. Eq. 137, the plaintiff owned and occupied a dwelling house fronting upon a public street. The city permitted hucksters of vegetables and other country produce to occupy the side of the street in front of plaintiff's house. The court held that this use of the street for a market place was both a public and a private nuisance, and awarded the plaintiff injunctive relief. See also *People ex rel. v. Mayor*, 59 Howard's Prac. Rep., 278.

In the case now in hand the city proposes to lease out spaces of the street in front of the business houses owned and occupied by the plaintiffs, such spaces to be used daily for the sale of garden products and the like, to the special injury of the plaintiffs. Such a use of the street is unlawful, because inconsistent with the rights of the public and the plaintiffs. The judgment is therefore affirmed. All concur.