Charles W. **SPEIGHT**, Commissioner of Highways, etc., Petitioner-Appellant,

v.

Jim **LOCKHART**, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Feb. 28, 1975.

Certiorari Denied by Supreme Court June 9, 1975.

R. A. Ashley, Jr., Atty. Gen., State of Tenn., Russell G. Lazenby, Jr., Asst. Atty. Gen., State of Tenn., Nashville, for petitioner-appellant.

Frank Buck, McAllen Foutch, Smithville, for defendant-appellant.

### OPINION

TODD, Judge.

In this eminent domain proceeding, there was a taking of a strip 25 feet in depth across the entire 785 feet frontage of defendant's land for the purpose of widening State Highway 56. In addition, a 1,000 square foot drainage easement was impressed upon the remainder of the tract. The jury awarded $1,750.00 for the property taken and $5,000.00 for incidental damages to the remainder. Both parties have appealed.

In the Trial Court and in this Court, issues arise from the plans for widening the highway which provide only one entrance to defendant's property from the highway and the statutes providing for regulation of entrances to state highways which statutes are as follows:

"*54–540. Entrances into highways—Regulations.*—In order to prevent the obstruction or restriction of the flow of water along, across or under any highway on the state highway system, the impounding of water upon or within any such highway, the damaging in any way or manner of any such highway, or the interference with or creation of any damage or hazard to public travel, the commissioner of highways of the state of Tennessee is hereby authorized and directed to make reasonable and proper rules and regulations governing the *con-*

*struction of entrances* into highways in the state of Tennessee on the state highway system. [Acts 1955, ch. 38, § 1; impl. am. Acts 1959, ch. 9, § 3.]

"*54–541. Agreement prior to construction mandatory.*—No person, firm, corporation or municipality shall hereafter *construct any entrance* into such highway without first having agreed to construct the same in accordance with said rules and regulations of the commissioner of highways. [Acts 1955, ch. 38, § 2; impl. am. Acts 1959, ch. 9, § 3.]

"*54–542. Penalty for failure to comply.*—Any person, firm, or corporation who shall hereafter *construct any entrances* into any highway on the state highway system without first having complied with the provisions of §§ 54–540 —54–542 shall be guilty of a misdemeanor and punished accordingly. [Acts 1955, ch. 38, § 3.]" (Emphasis Supplied)

It is the theory and insistence of the defendant landowner that the enactment of the foregoing statutes created a *potential* limitation and burden upon the rights of access to the public highway in respect to every property fronting upon a state highway in the State of Tennessee. Defendant concedes that said *potential* limitation or burden did not immediately authorize a suit in inverse condemnation by every potentially affected landowner; however defendant does insist that when any potentially affected landowner is before the courts in a proceeding for assessment of damages to his property in connection with the abutting highway, such owner must assert and collect his damages for said statutory impairment of his rights or be forever barred from relief, citing *Hawkins v. Dawn,* 208 Tenn. 544, 347 S.W.2d 480 (1961). For this reason, defendant insists that he is entitled to recover in the present action his damages for impairment of access rights under the quoted statutes. The Trial Judge agreed with defendant and instructed both witnesses and jury to consider the impairment of rights under said statutes.

Defendant also insists that the quoted statutes are unconstitutional and that the Trial Judge erred in not so holding.

The petitioner insists that said statutes are constitutional and entirely immaterial to the issues in the present case. Petitioner concedes that defendant has certain access rights to the public way, but denies that any such rights are being acquired by this proceeding. Petitioner insists that any action for denial of access must await an overt denial of access and may not be based upon a prospective possibility of denial.

As illustration of the powers being exercised by the petitioner under said statutes, there has been filed in this record a booklet entitled, "Rules and Regulations for *Constructing* Driveways *on State Highway Right of Way,*" effective April 3, 1967.

The foreword of said booklet is as follows:

"The following rules and regulations are designed to afford *easy and safe ingress* and egress to roadside establishments adjacent to the State's highways and to afford *maximum protection* to the traveling public, and to insure a *uniform* system of *construction* on the State Highway right-of-way."

"These rules and regulations are based on experience of the Tennessee Department of Highways and recommendations of the Committee on Planning and Design Policies of the American Association of State Highway Officials."

Said regulations contain a comprehensive scheme of requirements for all driveways entering state highways, including "Buffer Area," "Driveway Width," "*Driveway Angle,*" "Edge Clearance," "Corner Clearance," "Setback" "*Distance between driveways,*" "Parking," "*Number and Arrangement of Driveways,*" "*Sight Distance,*" "Driveway Surfacing and Profile," "Curbs and Guide Posts," "Drainage," and "Signs." A series of 15 drawings illustrate required designs of driveways both on the State

right-of-way and upon private property outside the State right-of-way.

Sections XIV and XV of said regulations describe procedure for obtaining a permit to construct a driveway on a State Highway Right-of-Way. An applicant is required to furnish the following:

1. Location of property
2. Plot plan of property
3. Copy of deed (proof of ownership)
4. Explanation of proposed usage of property
5. Any other information which might affect the access design.

The applicant is required to approve design of the proposed entrance as prepared by the state highway engineers. The applicant is also required to post a cash bond of from $100.00 to $500.00, or a surety bond in the amount of $2,500.00 for a single project or $10,000.00 for a "Statewide Bond."

There is also a reference to the maintenance of Liability Insurance "under the terms of the permit issued."

In Tennessee, the rights of abutting property owners to unobstructed access to the public way have been repeatedly recognized.

In *Stewart v. Illinois Central Railroad Company*, 143 Tenn. 146, 225 S.W. 1042 (1920), it was held that a city was without authority to grant a railroad an easement in a street which would effectively deprive abutting property owners of their rights of access to the public way, citing *Schopp v. City of St. Louis*, 117 Mo. 131, 22 S.W. 898, 20 L.R.A. 783 (1893).

In *City of Memphis v. Hood*, 208 Tenn. 319, 345 S.W.2d 887 (1960), our Supreme Court said:

"Of course, the property owners fronting upon a public thoroughfare have a right to free and convenient access thereto. The right of ingress and egress attaches to the land. It is a property right, as complete as ownership of the land itself." 208 Tenn. 324, 345 S.W.2d 889

However, in said case it was held that the changing of the frontage street from a two-way to a one-way street was the exercise of police power the results of which were not compensable in an eminent domain proceeding.

In *State ex rel. Moulton v. Williams*, 207 Tenn. 695, 343 S.W.2d 857 (1961), the Supreme Court recognized the authority of the State to limit access to highways built under T.C.A. § 54–2001 et seq. and 23 U.S. C.A. Sec. 111, the so-called "superhighway laws," which are not involved in the present case. The Court stated, however, that aggrieved abutting landowners had their right of action in inverse condemnation under T.C.A. §§ 23–1423, 23–1424.

In *Pack, Commissioner v. Belcher*, 62 Tenn.App. 23, 458 S.W.2d 18 (1969), this Court reversed and remanded where the charge to the jury had failed to distinguish between taking of one parcel, where there was no substantial interference with access to the public way, and two other parcels, where access was completely destroyed. In said case, this Court quoted from the unreported opinion of this Court in *Pack, Commissioner v. Cooper*, December 30, 1966 as follows:

"The denial of access to and from private property abutting on public thoroughfares is a relatively new practice in highway construction in this state. The state and its political subdivision should not be allowed to deprive abutting property owners of this long established right unless a clear intention to extinguish that right is made to appear at the time such private property is taken for use as a public thoroughfare. Of course, such right may thereafter be taken by the condemning authority upon payment of just compensation therefor." 62 Tenn. App., pp. 31, 32, 458 S.W.2d, p. 21

In *Pack v. Belcher*, this Court also said:

"It is urged by counsel for the land-owners, and seems to have been the position of the Trial Judge, that after the enactment of Chapter 38, Public Acts of 1935, (54–540, 54–541, T.C.A.), rights-of-way acquired for highway purposes impaired the abutting property owners' rights of ingress and egress and that such impairment, ipso facto, entitle the owner to damages. However, counsel overlooks the fact that such impairment, if any, may or may not be an incident to the taking in a given case, and that such impairment, if any, is not equivalent to the elimination of such rights of ingress and egress, as in the case of taking for a controlled access right-of-way where the purposes set forth in the declaration of taking and construction plans involve a complete obstruction or taking of the landowner's right of access.

.     .     .     .     .

"If it be conceded that the taking of property by the State for highway purposes after the enactment of Chapter 38, Public Acts of 1955 (§§ 54–540–542, T.C. A.), might impair the landowner's right of access, it should be made clear that his right of access may or may not be changed from that already existing and that the question depends upon the order of taking and the plans of the Highway Department made and filed, or it may depend on some future action of the Highway officials." 62 Tenn.App., pp. 32 and 33, 458 S.W.2d, p. 22

In *Shelby County v. Dodson*, 13 Tenn. App. 392 (1930), this Court held that interference with the right of access to property from the public way was compensable even though no part of the property itself was actually taken, citing *Morgan County v. Goans*, 138 Tenn. 381, 198 S.W. 69 (1917); *Pierce v. Gibson County*, 107 Tenn. 224, 64 S.W. 33 (1901) and *Hamilton County v. Rape*, 101 Tenn. 222, 47 S.W. 416 (1898) in which latter case the Supreme Court said:

"He has a right of ingress and egress to his property—or, as it is called, an easement of access—and if this is taken away, or if it is impaired or incumbered without his consent, it is a taking of his property for public purposes, for which he is entitled to compensation. Elliott on Roads and Streets, pp. 526, 161; Anderson v. Turbeville, 6 Cold., 158; Railroad v. Bingham, 3 Pick. (87 Tenn.) 526, 11 S.W. 705.

"[The] right of ingress and egress may be valuable or not, and may be of more or less value, according to the location of the property. Thus, in the country districts, when a grade is changed through a man's farm, the right of ingress and egress may, at any particular point, be of little or no value, and for it the abutting owner would be entitled to little or no damages; but, in case of suburban property, a way of ingress and egress to the front of every lot is a matter of importance, and the destruction or impairment of such way is a proper matter for compensation to the extent of the value of the right thus taken away. It is not a question of tort under the pleadings, but of taking a valuable property right without compensation, and the charge is not erroneous. Gray and Wife v. Knoxville, 1 Pickle (85 Tenn.) 101, 1 S.W. 622; Railroad v. Bingham, 3 Pickle (87 Tenn.) 526, 11 S.W. 705." 101 Tenn., pp. 225, 226, 47 S.W., p. 417.

The brief of appellant-petitioner contains the following statement:

"The legislature enacted T.C.A. [§] 54–540 under the State's police power and it has not given the Commissioner authority to restrict the number of entrances into an adjoining landowner's property but rather to regulate the design and construction of such entrances. Nor, is there any attempt by the Commissioner in promulgating the rules and regulations, which were required to be filed in this case, to restrict the number of entrances into a landowner's property.

"  .  .  .  Even assuming, arguendo, that T.C.A. [§] 54–540 authorized the State to limit the number of entrances in addition to the design, the taking in the present case and the construction of one entrance, being done under the laws of eminent domain, would not preclude a future action if the landowner were subsequently denied the right to construct another entrance at a different location on his adjoining property. His cause of action would not have accrued until the State denied him that right. The State did not deny him that right in the present proceeding.

"Finally, as an officer of this Honorable Court, the writer will state that in his opinion, if the landowner today makes application to the Department of Transportation for a permit to construct another entrance to his property at a different location along the 785 foot frontage, and if he designed the entrance according to the rules and regulations of the Department and otherwise complied therewith, the Commissioner would be acting illegally in refusing to issue a permit if his only reason was that the State had acquired control of access in this proceeding."

In 39 Am.Jur.2d, Highway, Streets and Bridges, § 178, pp. 552 et seq., is found the following text:

"The right of access to and from a public highway or street is a natural easement and one of the incidents of the ownership or occupancy of land abutting thereon, and exists whether the fee to the way is in the public or in private ownership. There are cases stating that an abutting owner or occupant has a right of access to the full width of the highway or street, and over its entirety to every part of his land, that is, for the entire distance that his land fronts upon the public way, but the general rule is that an abutting owner or occupant is not entitled to access to his land at every point between it and the highway but only to reasonable and convenient access to his property and the improvements on it. Regardless of whether a large tract is subdivided, the owner or occupant is entitled to a direct outlet on the highway for each reasonably independent economic-use unit thereof. The right of access may serve not only the personal comings and goings of the owner or occupant, but also his reasonable use of the property for business purposes.

"A properly authorized governmental unit has the power to regulate, reasonably, in the public interest, and without illegal discrimination, the extent of an abutter's private right of access from his property to the highway or street. The cases hold or recognize, however, that such power of regulation does not extend to depriving an abutting owner completely of all access to the street or highway, at least not without compensation therefor. No fee or charge may be imposed or exacted for the exercise of such right of access." 39 Am.Jur.2d, pp. 552, 553, 554

In 73 A.L.R.2d 640 and 47 A.L.R. 897 are collections of numerous authorities in support of the above text quotations.

In 39 C.J.S. Highways § 141, pp. 1079 et seq. is found the following text:

"  .  .  .  an abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this regardless of whether or not the fee of the highway is in him. These rights are property of which he may not be deprived without his consent, except on full compensation and by due process of law.

*Regulation and restriction of rights.* The rights of abutting owners are subor-

dinate to the right of the public to proper use of the highway. Thus the exercise of the rights of abutting owners is subject to reasonable regulation and restriction for the purpose of providing reasonably safe passage for the public; but regulations or limitations cannot be sustained which unduly delimit or unreasonably intermeddle with the rights of the abutting owners. The mere disturbance of the rights of the abutting owners by the imposition of new uses on the highway consistent with highway purposes must be tolerated.

"*Right of access.* As stated in Corpus Juris, an abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. While entire access may not be cut off, an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway; if he has free and convenient access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint.

"If necessary, to enable him to reach the traveled part of the road, he has the right to bridge a ditch or construct a grade for that purpose; but in doing so he has no right willfully to obstruct such ditch or highway, his rights as a private landowner being subordinate to the public right of constructing and keeping the highways in repair.

.  .  .  .  .

However, this right is subject to the condition that it must not unreasonably obstruct the way, or unreasonably render the use of the highway dangerous.

"The right of access of the abutting owner is subordinate to the rights of the state or the public at large, and is subject to reasonable regulation and restriction." 39 C.J.S., Highways pp. 1079–1082

In the footnotes of both of the above texts are cited numerous authorities holding particular regulations or restrictions upon driveways either valid because reasonable or invalid because unreasonable.

In *Town of Tilton v. Sharpe*, 84 N.H. 393, 151 A. 452 (1930), it was held that, in the absence of extraordinary peril to the public, an abutting landowner has the right of access at all parts of his frontage on the public way.

*Mueller v. New Jersey Highway Authority*, 59 N.J.Super. 583, 158 A.2d 343 (1960), is authority for the proposition, stated supra, that the owner of a large tract is entitled to the right of access for each "reasonably independent economic-use thereof" (including subdivision lots).

In *State ex rel. Highway Commission v. Hoffman*, Mo.App., 132 S.W.2d 27 (1939), it was held that, even though the state had constructed six entrances to his property, the abutting owner was not precluded from constructing another entrance at his own expense, so long as the rights of the traveling public were not interfered with.

In *State ex rel. Gebelin v. Department of Highways*, 200 La. 409, 8 So.2d 71 (1942), the court held that the department of highways has authority to limit the number of access connections from private land to the public highway to such extent as necessary for public safety, but that the exercise of such authority is subject to review by the courts, and access may not be totally denied.

In *Goodfellow Tire Co. v. Parks & Boulevards*, 163 Mich. 249, 128 N.W. 410 (1910), it was held that abutting owners have the absolute right of access to the public way which may not be impaired by the denial of a permit by commissioners even though they have statutory power to make reasonable rules and regulations and issue permits.

In the present case, the defendant by pleadings and the Trial Court by orders sought to elicit from petitioner a definitive

statement of the rights of access being taken and the rights remaining after the taking. In an understandable effort to avoid the relinquishment of any valid existing authority, petitioner responded in somewhat equivocal vein, leaving the Trial Judge in considerable doubt as to the position taken by petitioner in this suit and the position of defendant after the conclusion of this suit. For this reason, the Trial Court ruled in effect that, by virtue of the quoted statutes, petitioner had the unlimited power to regulate and limit defendant's access to the public way and that defendant should be compensated for the loss of his rights.

In reviewing the ruling of the Trial Court, this Court must first pass upon the meaning and constitutionality of §§ 54–540–542, T.C.A., supra.

■ A legislative act will not be held invalid if there is any reasonable construction of the act which will permit it to stand. *Farmer v. Wiseman*, 177 Tenn. 578, 151 S.W.2d 1085, 135 A.L.R. 1169 (1941). See many other authorities to this effect annotated in 5 Tenn.Digest, Constitutional Law ■

■ A study of §§ 54–540–542, T.C.A., discloses that the purpose and intent of said statutes is to afford regulation of *construction* within the rights-of-way of state highways and *not* to authorize regulation or restriction of the *rights* of *access* of abutting property owners. Note that each of said code sections includes the word "construct" or "construction" and does not specify the *exercise* of the right of access as being subject to regulation.

Accordingly, this Court holds that the statutes validly confer upon the Commissioner of Highways the power to exercise reasonable supervision and regulation of *construction* upon and within the rights-of-way of state highways, including the power to require application for permits *for such* *construction* and the grant of such permits on reasonable conditions.

Said statutes are *not* construed by this Court to empower the Commissioner of Highways to prescribe or supervise modifications or construction upon private property outside the public right-of-way, nor to impose any conditions upon the right to make application for permission to perform any desired construction on the right-of-way, nor to deny rightful access to the right-of-way. To the extent that the present or any future regulations attempt to do so, they exceed the power conferred, and are or would be invalid.

This Court recognizes the many safety factors involved in the movement of vehicles from private driveways onto modern, high-speed highways. However, the statutes under consideration do not appear to grant to the Commissioner the power to control or restrict access except in connection with regulation of construction within the public right-of-way. Any other powers to promote safety must be otherwise derived.

Since in the view of this Court, the quoted statutes do not deprive the defendant of any property right, nor authorize any regulation or action which deprives defendant of any property right, it follows that said statutes are valid and constitutional and no rights to compensation arose by their passage or exist by their existence.

■ Since, in the view of this Court, any part of present or future regulations which deprives an abutting owner of his rights of access is unauthorized and invalid, it follows that defendant has no rights to compensation because of the existence of said regulations or the promulgation of any future regulations pursuant to said statutes.

It is, of course, recognized that, if he is denied a permit for driveway construction within a state right-of-way, a property owner may consider that his rights to access

have been wrongfully denied. In such a case, and at that time, the property owner has access to the courts for review of the denial of permit or for compensation in inverse condemnation.

It is also recognized that the construction of the particular project for which this taking occurred (the widening of State Highway 56) may, by its very nature render access to the highway from defendant's land physically more inconvenient, difficult, dangerous or expensive. If this can be shown, this would be valid grounds for award of incidental damages in the present case.

Since the assessment of damages has not been made under the principles announced herein, it will be necessary that the cause be remanded for trial anew in conformity herewith.

The foregoing disposes of all questions raised in the briefs or renders a discussion of same unnecessary, except as follows:

The proffered testimony of the witness, Paul McQueen, as to the distinction between a controlled access project and a limited access project was properly excluded as being a matter of law and immaterial to the issues of fact on this case.

The excessiveness of the verdict, as insisted by petitioner, or the inadequacy of the verdict, as insisted by the defendant, are no longer at issue in this appeal because the cause will be remanded for a new trial.

The judgment of the Trial Court is set aside and the cause is remanded for a new trial. The costs of this appeal will be taxed and paid as part of the costs in the Trial Court.

Reversed and Remanded.

SHRIVER, P. J., and DROWOTA, J., concur.