STATE of Tennessee, on Relation of the COMMISSIONER OF THE DEPARTMENT OF TRANSPORTATION, For and on Behalf of DAVIDSON COUNTY, Petitioner-Appellee

v.

Jerry N. VANATTA, and wife, Jessie Huskins Vanatta, et al., Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 31, 1986.

Permission of Appeal Denied by Supreme Court April 6, 1987.

W. J. Michael Cody, Atty. Gen. and Reporter, Katherine A. Austin, Asst. Atty. Gen., Nashville, for petitioner-appellee.

Steve North, Nashville, for defendants-appellants.

## OPINION

CANTRELL, Judge.

The question on this appeal can be reduced to this: When in an eminent domain case the State takes property fronting on the street and destroys the owner's access to the remainder, what burden does the owner have with respect to reestablishing the access?

Prior to November 30, 1982, the defendants, Jerry N. Vanatta, and wife, Jessie Huskins Vanatta, owned an improved lot on the Clarksville Highway in Nashville. The lot fronted one hundred feet on the highway and contained a building out of which the defendants ran a small manufacturing business. The owners lived in a mobile home on the rear of the lot.

The lot in question sloped from the rear toward the highway with only a small depression serving as a "ditch" along the side of the road. Therefore, access to the lot could be obtained at any point along the one hundred foot frontage. In actuality, however, the defendants shared a driveway with their neighbors to the north. The driveway flared out at the highway and ran into the two lots on both sides of the line separating them.

In November of 1982 the State filed a petition to condemn approximately twenty-five feet off the front of the defendants' lot for the purposes of widening Clarksville Highway. On December 21, 1982, the court entered an order giving the State possession of the property described in the petition.

The State proceeded with the project and in the course of the construction built a ditch across the entire front of the defendants' property. The ditch has a bank ap-

proximately two and a half feet high on the highway side and approximately five feet high on the side next to the plaintiffs' lot. The ditch has a concrete bottom and beneath the bottom of the ditch the State buried a twenty-four inch storm water drain pipe. The drain pipe is connected to a catch basin in the ditch close to the defendants' northern property line. The construction of the ditch effectively eliminated the defendants' access to their property except insofar as they might enter at the sufferance of their neighbors to the north.

At the trial, Mr. Vanatta testified that the value of the property before the taking was $110,000 and that it was worthless afterwards because of the lack of access. One of the State's appraisers testified that the value of the property taken was $1,478 and the damage done to the remainder was $1,664 due to the elimination of the access. Her testimony, however, assumed that the defendants could get a permit from the State and the local government to build a driveway across the ditch. The other State's appraiser testified that the land taken had a value of $1,750 and that the remainder had been damaged $350 because of the destruction of the access. His opinion was based entirely on the cost to put a culvert in the ditch and construct a driveway over it; his opinion necessarily assumed that the defendants could get permission to build such a driveway. At the close of all the proof the defendants requested the following instruction:

"The evidence in this case shows that Defendant Vanatta can not obtain vehicular access to his property without the approval of the State Highway Department and the Metropolitan Government. The evidence also shows that the Defendant might or might not be able to obtain such a permit and the evidence has failed to show under what circumstances such a permit would be granted. I instruct you that you may not speculate as to whether or not a driveway permit could be obtained by the Defendant in making your determination of the value of the Defendant's property after the taking.

There has also been evidence that the Defendant has obtained vehicular access to his property in the past by permission of the adjoining landowner. I instruct you that the Defendant does not have as a matter of law the right to utilize adjoining property for access to his property and it would be speculative on your part to assume that such permission could be obtained or that such permission would continue for any period of time in the future in making an evaluation of the value of the Defendant's property at the taking."

The trial judge refused to give that instruction. The jury returned a verdict of $1,750 for the land taken, and $4,189 for the defendants' moving expenses and the damage to the remainder of the property.

■ The defendants' first issue concerns the trial judge's refusal to give the requested instruction. While we might not agree with the precise wording of the requested instruction, we agree that the jury should have been instructed that the burden is not on the landowner to re-acquire the right to access to his property. Where as a result of the taking the State completely destroys access from the public ways to the remaining property, the State should be made to choose one of two alternatives: reestablish at its own expense reasonable access to the remaining property, or pay the landowner for the damages to his or her property caused by the total denial of access.

It should be kept in mind that what is involved here is not a simple matter of obtaining a permit to cut the curb and enter the highway right-of-way from the defendants' property; what is involved is obtaining an easement across and permission to build a permanent structure (a culvert or bridge) on State property. The record does not contain any of the rules or regulations of the State governing the issuance of permits to construct driveways on State property. Our investigation reveals that the regulations have some strict requirements with respect to the information to be furnished by the landowner and require the landowner to post a bond. *See* Chapter 1680–2–1, *Rules and Regulations*

*of the State of Tennessee. See also Speight v. Lockhart,* 524 S.W.2d 249 (Tenn. App.1975).

The only direct proof in the record on the question of the issuance of the permit was elicited from an employee of the Metropolitan Government of Nashville who had authority over driveway permits. He testified that he knew of no reason why Mr. Vanatta could not get a permit if he applied. Some of the State employees testified that they had suggested that Mr. Vanatta apply for a driveway permit—the implication being that he could get one if he tried. However, such testimony allows the jury to speculate that all the defendant must do to regain access to their property is to go by the appropriate state or county office, pick up a permit, and then build a bridge over the ditch. There is no proof in the record to sustain that conclusion.

■ It is true that Mr. Vanatta had not applied for a permit. However, we think that requiring him to seek the permit places the burden on the wrong party. The State should not be allowed to argue that the landowner has the burden of seeking to recapture the lost access.

■ Our decision here is not in conflict with *Speight v. Lockhart,* 524 S.W.2d 249 (Tenn.App.1975). There the question was whether the landowner, who still had acess, had been damaged because of the State's enactment of its regulations governing the construction of driveways on State property. This Court held that the landowner had not been damaged and that any cause of action must await the wrongful denial of a permit. Here all access has been destroyed and obviously the defendants have been damaged thereby. The sole question here is whether under these circumstances the landowners have the burden of seeking a driveway permit, or whether the State has the burden of restoring access or compensating the defendants for its elimination.

We, therefore, reverse the judgment of the court below and remand the case to that court for a new trial. The State still has the option of providing reasonable access to the defendants or compensating

them for the denial of access. Tax the costs on appeal to the State.

TODD, P.J., and LEWIS, J., concur.