## IN THE COURT OF APPEALS OF TENNESSEE,

# FILED

**November 5, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**
**AT NASHVILLE**

_____

| | | |
|---|---|---|
| **CHARLES W. McKINNEY,** | ) | Smith County Circuit Court |
| a resident of Smith County, | ) | No. 3957 |
| Tennessee, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | |
| VS. | ) | C.A. No. M1998-00074-COA-R3-CV |
| | ) | |
| **SMITH COUNTY, TENNESSEE**, | ) | |
| a county duly constituted by the | ) | |
| State of Tennessee, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

_____

From the Circuit Court of Smith County at Carthage.
**Honorable Bobby Capers, Judge**

**Paul G. Summers, Attorney General and Reporter**
**George G. Boyte, Jr., Assistant Attorney General**
Attorneys for Defendant/Appellant.

**Jacky O. Bellar**,
BELLAR AND BELLAR, Carthage, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**:  (Concurs)
**LILLARD, J.**:  (Concurs)

In this inverse condemnation action, Defendant Smith County appeals the trial court's final judgment that suggested a $15,000 additur to the $7700 verdict rendered by the jury in favor of Plaintiff/Appellee Charles W. McKinney.  We reverse the trial court's judgment and remand this cause for a new trial on the issue of damages.

McKinney filed this inverse condemnation action seeking to recover damages for the taking of an easement that McKinney used to access property he owned in Smith County, Tennessee.  McKinney's amended complaint alleged that the State of Tennessee, by and through its Department of Transportation, was constructing a new road through Smith County and that the State's road project had "destroyed or greatly damaged [McKinney's] right of ingress and egress to said property."

The State Attorney General's Office filed an answer on behalf of Smith County.  In its answer, the County denied that any "taking" had occurred as a result of the State's road project.  The County later amended its answer to assert, as an affirmative defense, that McKinney's inverse condemnation claim was barred by the one-year statute of limitations set forth in Tennessee Code Annotated section 29-16-124 (1980).[1]  Prior to trial, the County filed a motion to dismiss or, in the alternative, for summary judgment based upon the statute of limitations.  The motion was denied.

At trial, the evidence showed that McKinney owned a 1.7-acre tract of commercially-zoned property near Highway 53 in Smith County. When McKinney acquired the property, he also received from his grantor a 50-foot wide unimproved easement that he used to access the property from Highway 53. Prior to construction of the State's road project, Highway 53 dead-ended at a "T" intersection near O.J.'s Restaurant. McKinney's easement ran from the front corner of his property to Highway 53, a distance of approximately 600 feet, and it connected to the highway near the "T" intersection.

The State's road project included the construction of a new highway, Highway 264, and it reconfigured the "T" intersection so that Highway 53 would intersect Highway 264. As a result of the State's reconfiguration of the intersection, McKinney no longer could use the easement to access his property from Highway 53.

During the trial, McKinney took the position that he lost the use of the easement on October 8, 1993, when the State condemned certain lots containing a portion of McKinney's easement. McKinney testified that, as a result of the October 1993 taking, his easement was reduced to only twelve feet in width, which was insufficient to access the property.

McKinney acknowledged that his easement also had been affected by an order of possession entered prior to October 1993. In September 1993, the State condemned a lot owned by James T. Watts. As a result of the earlier taking, McKinney's easement was reduced from 50 feet in width to approximately 30 feet in width. McKinney testified that, despite this reduction in width, he still could use the easement to access his property after the September 1993 taking. McKinney admitted that, at one point at the side of the road, the State took the entire width of the easement; however, he characterized the point at which this taking occurred as "infinitesimal."

As previously indicated, after the October 1993 taking, McKinney no longer could use the

easement to access his property from Highway 53. The proof showed, however, that, when the State's road project was completed, McKinney could access his property from the new highway, Highway 264, provided he built a ramp from his property to the highway. Because the difference in elevation between Highway 264 and McKinney's property was at least nineteen feet, the parties agreed that building a ramp would require a significant expenditure of funds. One of McKinney's experts, contractor John M. Moffield, estimated that such a ramp would cost over $25,000 to build. The County's experts, on the other hand, estimated that constructing a suitable ramp would cost between $7800 and $9400.

In an effort to prove his damages, McKinney testified that, as a result of the State's road project, his property had decreased in value from "at least $51,000" to "no more than $5,000," a difference of $46,000. McKinney also presented the testimony of Harold Gene Carmen, a local real estate broker and appraiser. Carmen estimated that the property's value just prior to the taking was $31,000. In reaching this estimate, Carmen deducted the amount that would have been required to build an access road over the old easement from Highway 53 to the property. Carmen opined that, due to its loss of access to Highway 53, McKinney's property had decreased in value by approximately $7750. Over the County's objection, Carmen testified that McKinney's damages also included the cost of constructing a new access ramp to Highway 264.

In contrast, the County presented the testimony of two experts who opined that, in their respective opinions, McKinney's property had not suffered any decline in value as a result of the State's road project. These experts included James Daniel Wamble, a licensed surveyor and civil engineer, and James S. Baggett, a real estate appraiser. Wamble even suggested that the property had benefitted from the State's road project because the property now had better access to a highway. Wamble acknowledged that McKinney would be required to build an access ramp to Highway 264, but he testified that building the new ramp would cost less than constructing an access road over the old easement would have cost.

At the conclusion of all the evidence, the County renewed its motion to dismiss based upon the one-year statute of limitations applicable to inverse condemnation actions. The trial court refused to dismiss the action and, without objection from either party, gave the jury the following instructions to determine McKinney's damages for the loss of his easement:

> [T]he landowner has a right to go to and from the landowner's property by using the easement that was there available . . . . This is called the right of access and is part of the value of the property. The right of access is the access that is reasonably required for the landowner's property, considering all the uses and purposes for which the property is adaptable, or available.
>
> The landowner is entitled to compensation for loss or serious impairment of the right of access. The amount of compensation is measured by the difference, if any, in the fair cash market value of the landowner's property valued at immediately before and immediately after loss or serious impairment to this right of access.
>
> In determining the value of access taken, you may consider whether the property has other accesses or whether access is created in the course of the construction of this project.

The jury returned a verdict finding the County "liable for damages to the extent of $7,700." After the trial court entered a judgment on the jury's verdict, McKinney filed a motion for new trial or, in the alternative, for suggestion of additur. The trial court conducted a hearing on McKinney's motion and, in August 1998, entered an order suggesting an additur of $15,000, for a total award of $22,700. The County accepted the additur under protest and appealed the trial court's decision to this court.

On appeal, the County contends that the trial court erred in (1) failing to grant the County's motion to dismiss based upon the one-year statute of limitations and (2) suggesting an additur of $15,000 above the jury's verdict of $7700.

We conclude that the County waived the statute of limitations issue for purposes of appellate review by failing to file a post-trial motion raising the issue. The County raised this issue at trial at the

conclusion of all the evidence by renewing its motion to dismiss McKinney's action based upon the one-year statute of limitations. In our view, the County's renewed motion to dismiss satisfied the requirement that, in order to take the initial step to preserve this issue for appellate review, the County make a motion for a directed verdict at the close of all the trial evidence. *See Cortez v. Alutech, Inc.*, 941 S.W.2d 891, 893 (Tenn. App. 1996) (indicating that renewed motion for summary judgment made at close of appellees' proof " obviously" constituted motion for directed verdict necessary to preserve issue for review on appeal).

The County failed, however, to raise the statute of limitations issue after the trial by filing either a motion for a new trial or a motion for a judgment notwithstanding the verdict. This court recently held that an appellant's failure to file either of these post-trial motions precluded appellate review of a directed verdict issue. Citing *Cortez v. Alutech, Inc.*, 941 S.W.2d 891 (Tenn. App. 1996), we explained that

> when the alleged error is the failure of the trial court to grant a directed verdict, either a motion for a new trial or a post-trial motion seeking entry of judgment in accordance with a motion for directed verdict made at trial (judgment n.o.v.) is sufficient to preserve the issue for appeal. [*Cortez v. Alutech*, 941 S.W.2d] at 894-95. Failure to file either of these post-trial motions, however, denies "the trial judge the opportunity to consider or reconsider alleged errors committed during the course of trial" and precludes appellate review of that issue. *Id*. at 895-96. The rationale for this holding is supported by Rule 36(a) [of the Tennessee Rules of Appellate Procedure] which provides that "[n]othing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

*Mires v. Clay*, ____ S.W.2d ____, 1999 WL 632823, at *5 (Tenn. App. 1999) (quoting T.R.A.P. 36(a)); *see also Shedd v. Hines*, 1989 WL 71049, at *2 (Tenn. App. June 28, 1989) (*no perm. app. filed*) (holding that appellant waived objection to trial court's refusal to consider statute of limitations defense by failing to include objection in motion for new trial).

Having held that the County waived the statute of limitations issue for purposes of appellate

review, we conclude that the only issue properly before this court is the propriety of the trial court's suggestion of additur in this case. Tennessee's additur statute authorizes the trial court to suggest an additur in cases where, in the court's opinion, the jury's verdict is not adequate to compensate the plaintiff for his damages. T.C.A. § 20-10-101(a)(1) (1994). If the defendant accepts the additur, the statute requires the trial court to enter a judgment that includes the additur. T.C.A. § 20-10-101(a)(2) (1994). If the defendant rejects the additur, the statute requires the trial court to grant the plaintiff's motion for a new trial "upon proper motion being made by the plaintiff." *Id*. Alternatively, if the defendant is dissatisfied with the trial court's suggestion of additur, the statute permits the defendant to accept the additur under protest and to appeal the trial court's decision to this court. T.C.A. § 20-10-101(b)(1) (1994).

In reviewing a trial court's suggestion of additur, this court customarily conducts a three-part analysis. *See Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. App. 1990); *see also Lebovitz v. Bearden*, No. 02A01-9211-CV-00308, 1993 WL 471479, at *2 (Tenn. App. Nov. 16, 1993) (*no perm. app. filed*). The additur statute sets forth one part of this analysis by directing this court to review the trial court's suggestion of additur "using the standard of review provided for in Rule 13(d) of the Tennessee Rules of Appellate Procedure applicable to decisions of the trial court sitting without a jury." T.C.A. § 20-10-101(b)(2) (1994). This standard requires us to "review the proof of damages to determine whether the evidence preponderates against the trial court's suggestion of additur." *Phillips v. Perot*, No. 02A01-9704-CV-00094, 1998 WL 117325, at *2 (Tenn. App. Mar. 17, 1998) (*no perm. app. filed*) (citing *Long v. Mattingly*, 797 S.W.2d at 896).

If the additur is supported by the trial evidence, this court then considers two other factors to determine whether the additur was proper: "(1) the trial court's reasons for the additur, and (2) the relation between the amount of the additur and the amount of the jury's verdict." *Phillips v. Perot*, 1998 WL 117325, at *2 (citing *Lynch v. Turner*, No. 01A01-9109-CV-00325, 1992 WL 23122, at *1 (Tenn. App. Feb. 12, 1992) (*no perm. app. filed*); *Lebovitz v. Bearden*, No. 02A01-9211-CV-00308, 1993

WL 471479, at *2 (Tenn. App. Nov. 16, 1993) (*no perm. app. filed*)). We examine the trial court's

reasons for suggesting the additur because "adjustments are proper only when the court disagrees with the

amount of the verdict." *Long v. Mattingly*, 797 S.W.2d at 896. We examine the amount of the suggested

additur because "adjustments that 'totally destroy' the jury's verdict are impermissible." *Id*. (citing *Foster v.*

*Amcon Int'l, Inc.*, 621 S.W.2d 142, 148 (Tenn. 1981); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn.

App. 1986)).

Applying this three-part analysis in the present case, we first conclude that the evidence does

not preponderate against the trial court's suggestion of additur because the additur resulted in a judgment that

remained within the range of the valuation evidence presented at trial. The County's expert witnesses testified

that, in their respective opinions, the State's road project had not negatively affected the value of McKinney's

property. McKinney's expert witness, on the other hand, opined that McKinney's property had declined in

value by $7750. McKinney himself testified that he believed the property had declined in value from

$51,000 to $5,000, a difference of $46,000. Thus, the damage estimates introduced at trial ranged from

zero to $46,000.

The jury's verdict of $7700 approximated the amount of damages estimated by McKinney's

expert, and the trial court's additur of $15,000 effectively increased the jury's verdict to $22,700. Although

the final judgment of $22,700 significantly exceeded the jury's verdict, the judgment still remained well within

the range of the damage estimates introduced at trial. Accordingly, the evidence does not preponderate

against the trial court's suggestion of additur. *Reeves v. Olsen*, 691 S.W.2d 527, 531 (Tenn. 1985);

*Wilder v. Tennessee Farmers Mut. Ins. Co.*, 912 S.W.2d 722, 727 (Tenn. App. 1995); *Burchfield v.*

*State*, 774 S.W.2d 178, 183 (Tenn. App. 1988).

As for the third part of the analysis, we further conclude that the suggested additur does not

totally destroy the jury's verdict. The appellate courts of this state have expressed their reluctance to

establish a numerical standard for reviewing additur and remittitur cases. *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 148 n.9 (Tenn. 1981); *Guess v. Maury*, 726 S.W.2d 906, 913 (Tenn. App. 1986); *Lebovitz v. Bearden*, No. 02A01-9211-CV-00308, 1993 WL 471479, at *4 (Tenn. App. Nov. 16, 1993) (*no perm. app. filed*). Nevertheless, in examining the relation between the amount of the additur and the amount of the jury's verdict, courts invariably quantify the ratio that the resulting judgment bears to the original jury verdict.[2] In *Lynch v. Turner*, No. 01A01-9109-CV-00325, 1992 WL 23122, at *2 (Tenn. App. Feb. 12, 1992) (*no perm. app. filed*), for example, we noted that "most of the reported cases deal with additurs in the range of one to two times the jury verdict." There, we affirmed a suggested additur even though the resulting judgment was four times larger than the jury's verdict. Similarly, in *Ledford v. French*, No. 02A01-9106-CH-00102, 1992 WL 1144, at *2 (Tenn. App. Jan. 7, 1992) (*no perm. app. filed*), we affirmed an additur even though the resulting judgment was approximately five times larger than the jury's verdict. And, in *Phillips v. Perot*, No. 02A01-9704-CV-00094, 1998 WL 117325, at *2 (Tenn. App. Mar. 17, 1998) (*no perm. app. filed*), we affirmed all of the trial court's suggested additurs where the largest additur was roughly five-and-one-half times greater than its corresponding verdict. In each of these cases, we concluded that the amount of the suggested additur did not destroy the verdict's integrity. *Cf*. *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 148 (Tenn. 1981) (reversing additur that was thirty times jury's verdict); *Lebovitz v. Bearden*, No. 02A01-9211-CV-00308, 1993 WL 471479, at *4 (Tenn. App. Nov. 16, 1993) (*no perm. app. filed*) (reversing additur that was more than twenty times jury's verdict).

In the present case, the trial court's additur resulted in a final judgment that was almost three times greater than the jury's verdict. Based upon the foregoing decisions of this court, we cannot say that the trial court's suggested additur bore so little relation to the jury's verdict that it totally destroyed the verdict.

When we examine the trial court's reason for the additur, however, we conclude that the law does not support the suggestion of additur made in this case. At the hearing on McKinney's motion for new trial or additur, the trial court expressed its dissatisfaction with the jury's verdict for the following reason:

But my concern, I guess, and reviewing all the proof and – well, I think it's just the cost of building a ramp down to the property – I do know the height of the property and elevation to it, and the fact it doesn't have any access to the property any longer, that causes the court some concern as to what it would cost to actually get from the new roadway, even though he has – his property abuts the – doesn't abut the new road. It's just the cost of building a suitable ramp from the roadway down to that property, and that's what causes the court some concern. That is what I have a concern about.

So I want you to get the transcript and brief this whole thing, and let's look at the whole thing at a future date. But that's one concern that I have, and the State needs to be aware of, is the fact it doesn't have any frontage – it does have frontage, but how do you get from an elevated roadway down to the lot itself, the property itself? That causes me some concern.

. . . .

Well, anyway, what I want to do is get the transcript, look at that. I want everyone to understand that I'm not so much concerned about the values people placed on it. My concern is what it would cost to make an adequate entrance to the property from an abutting roadway. Okay?

. . . .

. . . [M]y concern is the cost of constructing a suitable entrance to this property from the adjacent road.

As indicated by the trial court's comments, the court was not concerned that the jury's verdict was inadequate to compensate McKinney for the decrease in value of his property. Rather, the trial court was concerned that the jury's verdict failed to compensate McKinney for the cost of constructing an access road to the property to replace the easement that was taken by the State. Apparently, the trial court believed that McKinney was entitled to recover damages both for the decrease in value of McKinney's property and for the cost of constructing an access road to replace the easement. Inasmuch as the trial court's comments reveal a mistaken view of the applicable law of damages, we reverse the trial court's suggestion of additur and remand this case for a new trial.

Tennessee has long recognized that a landowner whose easement of access has been taken or impaired by the State may bring an action for inverse condemnation against the State. *Shelby County v.*

***Barden***, 527 S.W.2d 124, 127 (Tenn. 1975); ***Tate v. Monroe County***, 578 S.W.2d 642, 644 (Tenn. App. 1978).  As our supreme court has explained,

> [t]he proposition that the diminution or deprivation of access to private property by the State is a compensable taking hardly requires citation.  Rights of ingress and egress have long been recognized by Tennessee courts as property rights for which just compensation is due.

***Blevins v. Johnson County***, 746 S.W.2d 678, 681-82 (Tenn. 1988).

In an inverse condemnation action, the measure of damages to the landowner is the same as that awarded in any condemnation suit.  ***Shelby County v. Barden***, 527 S.W.2d at 127; ***Tate v. Monroe County***, 578 S.W.2d at 645.  As a general rule, the correct measure of damages in such cases is the difference between the fair market value of the plaintiff's property prior to the taking or impairment of the access and the property's value after the taking and the construction of the project for which the property right was taken.  ***Shelby County v. Barden***, 527 S.W.2d at 127-28; ***East Park United Methodist Church v. Washington County***, 567 S.W.2d 768, 771 (Tenn. App. 1977); ***Stokely v. Southern Ry. Co.***, 418 S.W.2d 255, 260 (Tenn. App. 1967).

The appellate courts of this state have recognized that the availability of other access to the property or, alternatively, the cost of obtaining or constructing new access to the property may be relevant to the determination of the property's diminution in value.  ***Shelby County v. Barden***, 527 S.W.2d at 128; ***Tate v. Monroe County***, 578 S.W.2d at 645; ***Stokely v. Southern Ry. Co.***, 418 S.W.2d at 260; ***City of Lebanon v. Merryman***, No. 01A01-9005-CV-00157, 1990 WL 177348, at *3 (Tenn. App. Nov. 16, 1990), ***perm. app. denied*** (Tenn. Jan. 28, 1991).  Historically, however, this court refused to include the cost of restoring access to the property in its calculation of damages.  ***See, e.g.***, ***Brookside Mills, Inc. v. Moulton***, 404 S.W.2d 258, 264 (Tenn. App. 1965); ***City of Lebanon v. Merryman***, 1990 WL 177348,

at *3.

In recent years, this court has held that the cost to restore a property owner's access to a public street may be a proper measure of damages in either a condemnation case or an inverse condemnation case. *Betty v. Metropolitan Gov't*, 835 S.W.2d 1, 7 (Tenn. App. 1992) (inverse condemnation); *State ex rel. Comm'r of Dep't of Transp. v. Vanatta*, 728 S.W.2d 341, 342 (Tenn. App. 1986) (condemnation). These more recent decisions, however, do not stand for the proposition that the landowner may recover both diminution in value and cost of restoration for the same taking. Rather, as we read these decisions, they hold that the landowner may recover either for the diminished value of his property or for the cost to restore access, whichever is less. *See Betty v. Metropolitan Gov't*, 835 S.W.2d at 7 (holding that "[p]roperty owners may recover for the diminished value of their property or for the cost of repairs, whichever is less"); *State v. Vanatta*, 728 S.W.2d at 343 (holding that state had "the option of providing reasonable access to the defendants or compensating them for the denial of access"); *see also Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 108 (Tenn. App. 1975) (holding that "the measure of damages for injury to real estate is the difference between the reasonable market value of the premises immediately prior to and immediately after injury but if the reasonable cost of repairing the injury is less than the depreciation in value, the cost of repair is the lawful measure of damages").[3]

In our view, the trial court's comments in the present case reflected the court's mistaken assumption that McKinney was entitled to recover both for the diminution in value of his property and for the cost to restore access to the property. The trial court apparently believed that the jury's verdict compensated McKinney only for the diminution in value of the property, and the court suggested an additur in an effort to compensate McKinney for the cost of restoring access to the property. Inasmuch as McKinney was not entitled to recover both of these elements as damages, we conclude that the suggestion of additur cannot stand and that this case must be remanded for a new trial on damages. *See Foster v. Amcon Int'l*, 621 S.W.2d at 149; *Lebovitz v. Bearden*, 1993 WL 471479, at *4.

The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to McKinney, for which execution may issue if necessary.

 

_____

FARMER, J.

 

_____

CRAWFORD, P.J., W.S.

 

_____

LILLARD, J.